BALDWIN et al. v. BAY REALTY CO. et al.

(Supreme Court, Appellate Division, Second Department. June 4, 1915.)

CORPORATIONS ⊂═⊃68—CAPITAL STOCK—WITHDRAWAL OF CAPITAL.

 The owner of all the stock in a racing association organized a realty company, of which he also owned all the stock. The realty company bought land owned by the racing association and gave its stock in payment therefor, which was received by the owner of the remainder of the stock. Subsequently the land was reconveyed to the racing association, and money loaned on the strength of its ownership thereof. *Held*, that there was no withdrawal of capital within the meaning of the statute.

 [Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 181–183, 449; Dec. Dig. ⊂═⊃68.]

Appeal from Special Term, Kings County.

Action by Arthur J. Baldwin and others, as executors of Joseph D. Carroll, deceased, against the Bay Realty Company and others. From a judgment for defendants, plaintiffs appeal. Affirmed.

Argued before JENKS, P. J., and THOMAS, STAPLETON, and RICH, JJ.

Martin Conboy, of New York City, for appellants.

James M. Gray, of Brooklyn (Lynn C. Norris, of Brooklyn, on the brief), for respondents.

---

⊂═⊃For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

THOMAS, J. Engeman owned all the stock of the Brighton Beach Racing Association, who owned the land in question. To deal in real estate, and to do other things, Engeman formed the Bay Realty Company, and all the stock was issued to him, save 25 shares, issued to persons whom he commanded; but he in fact owned such shares. Engeman personally offered to sell the land to the Bay Company for $100,000, subject to a mortgage of $74,800 and taxes and its note for $2,500, and to accept in payment 975 shares of its stock. The Bay Company passed a resolution to purchase the property on the terms named, "and that the officers issue shares of stock of this company and deliver the same to W. A. Engeman, accepting in full payment therefor a deed of said real estate." In fulfillment of this contract made with Engeman, the Brighton Company conveyed the land to the Bay Company; but there is no evidence that it ever received the stock or any consideration beyond the $1 recited in the deed. So Engeman, owning all the stock of the Brighton Company, which had the property, sold it to the Bay Company, and received therefor 975 shares of stock, which had already been issued to him, and the Brighton Company received nothing. Later the Bay Company reconveyed to the Brighton Company, subject to the same mortgage, taxes, assessments, and all leases. So the situation was that the Brighton Company again had title to the land, which Engeman had taken from it without any consideration; Engeman had title to the stock, which he had had at all times.

As between the two companies, the Bay Company may the least complain. It took land from the Brighton Company, knowing that it was contrived so that the Brighton Company should receive nothing of value for it, and that Engeman should keep the entire consideration, viz., the 975 shares of stock, which were apparently already his property. The Brighton Company, by the reconveyance, received what belonged to it, and the Bay Company surrendered what it had in the first instance knowingly taken away from the Brighton Company without paying any equivalent. It is the only feature of the transaction that has a semblance of lawfulness. But it seems that as a part of the plan of reconveyance the Brighton Company released Engeman from an indebtedness of $300,000. What was that indebtedness? Engeman owned the stock of the Brighton Company; hence through the company he owned all its property; he owed the company at least $300,000; it in form forgave him the debt when he caused the land, which he had taken from it without consideration to it, to be reconveyed. It was a matter entirely between Engeman and the Brighton Company, just as the pretended issuing of the stock of the Bay Company for the conveyance to it was a matter from which the Brighton Company was excluded. There was no consideration diverted from the Bay Company. There was no agreement to pay it anything. Indeed, there is no evidence that the Brighton Company had any agreement with the Bay Company. The land was not withdrawn to be delivered to Engeman, stockholder of the Bay Company, but to become again the property of the Brighton Company. The advantage to Engeman was not as the stockholder and sole stock owner of record of the Bay Company, but as the sole stockholder of the

Brighton Company. The conveyance to the Bay Company was to give value to stock of that company and correspondingly diminish the value of the stock of the Brighton Company. So Engeman by the first conveyance helped himself by augmenting the value of his Bay stock. But he thereby hurt the value of the Brighton stock. Then he undid what had been done, and restored affairs to the first position. The Brighton Company was a mere form used by Engeman for operation. The Bay Company was something made to mask his personal action. As he says respecting the deed to the Bay Company, "I ordered it done, and it was done." So, when he ordered it undone, it was undone. After the return of the property to the Brighton Company, whereby was corrected an unlawful act, persons loaned money on the security of the land and bought some of the land. They bought it from the Brighton Company that of right had title to it. Who was harmed? Mr. Carroll had loaned Engeman money, and the 975 shares of the Bay Company stock were pledged as collateral. Years passed; the certificates in blank were found after his death untransferred on the books. During all this time he had left Engeman the apparent, as he was the legal, owner of the stock. Thus enabled to do all the acts that a stockholder could lawfully do, and by his ownership to manage the company, what Engeman did, and his only commendable act, was to restore the land to the Brighton Company, from which it had been taken without right and without consideration.

That was not withdrawal of capital within the meaning of the statute. The judgment should be affirmed, with costs.

The parties hereto having stipulated in open court that this case may be disposed of by a court of four, the decision is as follows:

Judgment affirmed, with costs. All concur.